**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

TONYA HOWARD and EBONY JOHNSON,

    Plaintiffs,

       V.

TATE LEGACY INC. and DARLENE TATE,

    Defendants.

No. 24 CV 7245

Judge Manish S. Shah

**MEMORANDUM OPINION AND ORDER**

Tonya Howard and Ebony Johnson first sued Darlene Tate and her business, Tate Legacy Incorporated, in 2022, alleging failure to pay minimum wage and overtime in violation of the Fair Labor Standards Act and Illinois law, as well as violations of the Illinois Wage Payment and Collection Act. The parties settled, but after Tate missed the first payment she owed under the settlement agreement, Howard and Johnson filed this case in 2024. Tate and her company were no longer represented by counsel. The company defaulted, and at summary judgment, I found that Howard and Johnson were employees, rather than independent contractors. A trial was necessary to establish how much the two had worked, and whether equitable tolling should apply back to the date they filed their first case. For the reasons discussed below, I find in favor of Tate on all claims against her. Tate Legacy remains in default, and I now enter judgment against it as to Johnson's minimum wage claims, with damages of $15,960. Plaintiffs have failed to carry their burden as to all other claims against Tate Legacy, and I find in favor of the defendant.

## I.      Legal Standards

"In an action tried on the facts without a jury …, the court must find the facts specially and state its conclusions of law separately." Fed. R. Civ. P. 52(a)(1).  I have "no legal obligation to discuss each piece of evidence in the record" and need only include sufficient subsidiary facts so that a reviewing court can clearly understand the steps by which I reached my ultimate conclusion. *Oye v. Hartford Life & Accident Ins. Co.*, 140 F.4th 833, 838 (7th Cir. 2025) (citing *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 686 (7th Cir. 2010)). To the extent that any findings of fact herein may be considered conclusions of law, they shall be deemed conclusions of law, and vice versa. *See In re Lemmons*, 742 F.2d 1064, 1070 (7th Cir. 1984) ("The labels of fact and law assigned by the trial court are not controlling.").

## II.      Findings of Fact

Darlene Tate owned and operated Tate Legacy Incorporated, doing business as Tax Refund Max, a now-defunct tax preparation company.[1] In 2019, Tate contracted with Tonya Howard and Ebony Johnson to prepare tax returns for Tate Legacy clients. Tate treated Howard and Johnson as independent contractors, paying them a piece rate—$125 to $175 for each return that resulted in a refund to the client—but not an hourly wage,[2] and she kept no records of the hours they worked. Johnson left

---

[1] These findings of facts are drawn from the testimony and exhibits presented at the bench trial on July 22, 2026, facts previously established in this case, and sources from which I may properly take judicial notice. Fed. R. Evid. 201. The trial transcript has not been prepared, and I rely on my recollection of the testimony.

[2] Tate occasionally paid Howard $10 per hour for filling in when the office manager took time off. The amount and frequency of those payments were small and are not in the record.

the business in February 2020. Howard remained until March 2022, when Tate terminated the relationship.

Shortly after Howard's termination, in May 2022, Howard and Johnson sued Tate and Tate Legacy, alleging that defendants had misclassified them as independent contractors and denied them overtime compensation in violation of the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.*, and Illinois law. *See Howard v. Tate Legacy Inc.*, No. 22-cv-02817 (N.D. Ill.). Defendants appeared through counsel and answered, and the parties proceeded through discovery before accepting a referral to Magistrate Judge Jantz for settlement discussions. 22-cv-02817, [10], [31], [32].[3] In January 2024, the parties reported that they had reached an agreement. 22-cv-02817, [78]. The parties consented to the magistrate judge's jurisdiction, and the case was reassigned to Judge Jantz for settlement approval. 22-cv-02817, [80], [81]. On March 25, 2024, the court approved the parties' settlement as a fair, adequate, and reasonable resolution of a bona fide wage dispute under the FLSA and dismissed the case with prejudice. 22-cv-02817, [87].

Less than three weeks after the dismissal, plaintiffs moved to reopen the case, asserting that defendants had failed to comply with the settlement agreement. 22-cv-02817, [88]. The motion was denied—the case had been dismissed with prejudice, so the court no longer had jurisdiction to enforce the parties' agreement. 22-cv-02817, [89] (citing *Shapo v. Engle*, 463 F.3d 641, 643 (7th Cir. 2006)).

---

[3] Citations to docket entries in the prior case, 22-cv-02817, identify that case by number. Bracketed numbers without a case number refer to entries on the district court docket in this case, 24-cv-07245.

3

Plaintiffs filed this second action in August 2024, asserting the same claims and alleging that Tate fraudulently entered into the settlement agreement and then repudiated it. [1] ¶ 2. Tate filed a joint answer on behalf of herself and Tate Legacy without counsel. [5]. Because a corporation is legally incapable of appearing in federal court unless represented by counsel, the answer was not effective as to Tate Legacy. [6]; *Philos Techs., Inc. v. Philos & D, Inc.*, 645 F.3d 851, 857–58 (7th Cir. 2011). The company never retained a lawyer, and an order of default was entered against it. [11]. Tate, appearing pro se, defended the case on her own behalf. [9]; [16]. Once fact discovery closed, plaintiffs moved for summary judgment. [13]; [17]. Tate responded to the motion, but she did not cite or provide any evidence controverting plaintiffs' factual assertions, so plaintiffs' Local Rule 56.1 statement was accepted as undisputed. [20]; [22] at 2 n.1.[4]

I granted the motion in part and denied it in part. [22]. As a matter of economic reality, Howard and Johnson were Tate's employees—not independent contractors—under both federal and Illinois law, and Tate never paid them an overtime premium for hours worked over 40 in a week. [22] at 6–7. But timeliness narrowed the case considerably. Plaintiffs offered no evidence that Tate's violations were willful, so the FLSA's two-year statute of limitations applied and barred both plaintiffs' federal

---

[4] "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted *for purposes of the motion.*" *Cracco v. Vitran Exp., Inc.*, 559 F.3d 625, 632 (7th Cir. 2009) (emphasis added). Such admissions do not extend to trial, where plaintiffs must present sufficient evidence to meet their burden. *See id.*

claims, absent equitable tolling back to the filing of the first suit; the Illinois Minimum Wage Law's three-year limitations period barred Johnson's state-law claim, but not Howard's. [22] at 8–9.

Plaintiffs also failed to establish the amount and extent of their damages at summary judgment. Their own accounts of the hours they worked were contradictory, and they offered no evidence of what they were paid from which a regular rate could be computed. [22] at 10–11. I found that Tate was liable to Howard for any damages resulting from violations of the Illinois Minimum Wage Law's overtime provision, 820 ILCS 105/4a, proven up at trial; all other relief was denied, with judgment to be entered against plaintiffs on the federal claims and Johnson's state-law claims unless plaintiffs came forward with evidence supporting equitable tolling. [22] at 9, 11–12.

Having established that Howard and Johnson were employees within the meaning of the Act at summary judgment, two factual issues remained for resolution at trial: (1) whether circumstances exist to support the application of equitable tolling back to the date of filing of the complaint in *Howard v. Tate Legacy Inc.*, 22-cv-02817 (N.D. Ill.), and (2) the number of hours Howard and Johnson worked while employed by Tate.

Tate, when asked on direct examination why she signed the settlement agreement, answered that she viewed a $40,000 settlement as favorable to risking a six-figure damages award at trial. I find her testimony as to her intent when entering into the settlement agreement to be credible. While she failed to make her first scheduled payment under the settlement agreement less than three weeks after she

signed it, [85-1] at 8, that was because income she hoped to receive at the end of the tax season did not materialize, not because of a premeditated intent to deceive Howard and Johnson.

As to the hours Howard and Johnson worked, Tate (believing that they were independent contractors rather than employees) did not set the schedules for either nor did she keep any records of the time they worked. As a result, plaintiffs are forced to rely on less precise evidence of their hours, including their own recollections, and records of how many returns they filed.

The parties present conflicting narratives as to how many hours per week Howard and Johnson worked while employed by Tate Legacy. According to Howard, she mainly worked from 8:30 a.m. to 6:00 p.m., Monday through Saturday, and noon to 4:00 p.m. on Sundays. She also claims to have never taken a day off and only seldom took a lunch break, usually eating at her desk. That sums to a 61-hour work week. Johnson testified that she worked substantially similar hours during her year working for Tate Legacy, except she was less specific—noting that she would sometimes arrive as early as 8:00 a.m. and stay until after 6:00 p.m. Despite testifying that she arrived earlier and stayed later than Howard did, she only claims to have worked 45 to 50 hours each week.

Tate told a different story. She testified that, in 2021, her office was open from 10:00 a.m. to 6:00 p.m., Monday through Saturday, and from noon to 4:00 p.m. on Sunday; and, in 2022, from 10:00 a.m. to 7:00 p.m. Monday through Friday, from 10:00 a.m. to 6:00 p.m. on Saturday, and closed on Sundays. According to Tate,

6

neither Howard nor Johnson had a key to the office before 2022, and so could not have worked before the office opened at 10 a.m. While Tate did not testify to how many hours Howard and Johnson worked, she presented the hours of her office as bounds limiting what was possible.

The parties do not disagree on the number of weeks worked in each tax season, and I find the testimony and exhibits sufficiently credible to establish that fact. Howard worked 15 weeks in the 2020 tax season, 24 weeks in the 2021 tax season, PX-16, and 16 weeks in the 2022 tax season, PX-17. Johnson worked 16 weeks during the 2020 tax season.

When asked if she could identify any week where she didn't work 60 hours, Howard said that she was there every day because she lived down the street from the office. But she also said that she would at times work from home and solicit new clients at a currency exchange (sometimes called a satellite location). Johnson similarly testified that she at times worked from home and was only in the office five days per week.

At the satellite locations, Howard and Johnson signed up new clients (with Tate paying a referral fee to the currency exchange). Tate did keep some records of tax returns generated from the satellite locations, including the date and time the return was prepared, and the agent who prepared it. The records of Howard's work at the satellite locations do not reflect any returns being prepared before 10:30 a.m. PX-04. And all but 3 of the 37 tax returns reflected on the sheets were prepared in the afternoon. PX-04.

I do not find Howard and Johnson's testimony as to their hours worked to be credible. For one, I find Tate's testimony as to the hours her office was open to be more credible. Tate testified that her office was open for at least 52 hours per week during the tax season, but Howard and Johnson were not there every second the office was open. And while the off-site marketing work (passing flyers, staffing a currency exchange to solicit customers) also count for their hours worked, those duties were not especially time-consuming.

Furthermore, the number of returns being completed by Howard and Johnson was not consistent with more than 40 hours per week of work. In the 2020 tax season, Johnson completed 24 tax returns across 15 weeks. PX-11. In the 2021 tax season, Howard completed 95 tax returns over 24 weeks. PX-17. And, in the 2022 tax season, Howard completed 70 returns over 16 weeks. PX-18. Nothing in the record indicates to me that the types of returns Howard and Johnson were preparing were especially complicated—they entered information into tax preparation software provided by Tate and submitted the return. In her closing argument, Tate said a return would not take more than 30 minutes in most cases. While not testimonial evidence, Tate's comment was a reasonable inference drawn from the nature of her tax practice, and I find that the return preparation work was relatively simple.

Granted, an employee is working under the Fair Labor Standards Act whenever the employer suffers or permits her to work. 29 U.S.C. § 203(g). Time Howard and Johnson spent at Tate Legacy's office waiting for customers to come in or spent outside passing flyers—being "on the clock" in the colloquial sense—counts

8

as hours worked. But even granting them that inference, the evidence is more consistent with a standard, 40 hour per week full-time job than it is with one that required substantial amounts of overtime.

## III. Conclusions of Law

### A. Equitable Tolling

Tate asserts the statute of limitations as an affirmative defense to all claims brought against her. [5] at 6. Because Tate Legacy lacks representation and is in default, it cannot assert any affirmative defenses, and the statute of limitations has no effect on plaintiffs' case against it. Claims under the Fair Labor Standards Act are subject to a two-year statute of limitations, unless the claim arises out of a willful violation, in which case the statute of limitations is extended to three years. 29 U.S.C. § 255. Plaintiffs do not argue that Tate willfully violated the Act, so I apply a two-year statute of limitations for the FLSA violations. The corresponding statute of limitations under the Illinois Minimum Wage Law is three years. 820 ILCS 105/12.

Tate has met her burden to establish that the statute of limitations applies. *See United States. v. Lewis*, 411 F.3d 838, 842 (7th Cir. 2005) (defendant's burden is met where "the allegations of the complaint itself set forth everything necessary to satisfy the affirmative defense, such as when a complaint plainly reveals that an action is untimely under the governing statute of limitations"). The complaint in this case was filed in August 2024, two years and four months after Howard was fired by Tate, and more than four years after Johnson voluntarily left Tate Legacy.

Plaintiffs argue for the application of equitable tolling. Equitable tolling "is an extraordinary remedy, and the burden is on the party seeking its application to

9

demonstrate that it is warranted." *Dent v. Charles Schwab & Co., Inc.*, 121 F.4th 1352, 1353 (7th Cir. 2024). A litigant "is 'entitled to equitable tolling' only if he shows '(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way' and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (citing *Pace v. DiGuglielmo*, 544 U.S. 408, 418 (2005)).

While Howard and Johnson did pursue their rights diligently, no extraordinary circumstances stood in their way to prevent timely filing. Equitable tolling is a poor fit for this case because, among other reasons, plaintiffs actually did timely file their complaint back in 2022. The fact that Tate later breached a settlement is not evidence of extraordinary circumstances preventing timely filing—it's the basis of a breach of contract claim that plaintiffs never filed.

The procedural history of this case, and the oversights of both parties, illustrate that the application of equitable tolling would be inapposite here. Nothing in the settlement agreement provides for reinstatement of plaintiffs' claims if defendants breached. *See* PX-02. The parties could have dismissed the earlier case without prejudice, to be converted to a dismissal with prejudice once the terms of the settlement had been fulfilled—but they did not. Both sides were represented by counsel, and it is reasonable to assume that Tate offered to pay $40,000 to receive the full benefit of a dismissal with prejudice—a dismissal without prejudice may have been worth less. But the only instrument demonstrating the intent of the parties—a fully executed settlement agreement—does not contemplate the course of action plaintiffs took here.

10

This case should not even be in federal court—as the court of appeals, *McCall-Bey v. Franzen*, 777 F.2d 1178, 1185 (7th Cir. 1985), has spoken about expressly:

> If indeed the case was dismissed under Rule 41(a)(1)(ii), the plaintiff could not later complain to the court that the dismissal had been premised on a settlement agreement that the defendant had violated, and ask the court to order the defendant to abide by the agreement. The court would not have jurisdiction over the dispute merely by virtue of having had jurisdiction over the case that was settled. The violation of the settlement agreement would be a breach of contract remediable under state but not federal law, and therefore only in state court since the parties are not of diverse citizenship.

But that is not how the case proceeded. Plaintiffs filed a new case in federal court asserting substantially similar claims, leaving defendants with the burden of asserting claim preclusion. With Tate lacking the assistance of counsel, and Tate Legacy in default, no such assertions were made, and the affirmative defense was forfeited. *See VLM Food Trading Int'l, Inc. v. Illinois Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016) ("The defaulting party cannot contest the fact of his liability…").

But none of the above constitutes exceptional circumstances justifying the application of equitable tolling. The statute of limitations therefore bars all federal claims against Tate, and all claims under Illinois law except for those arising out of the 2022 tax season.

### B. Timely Payment

Plaintiffs alleged in their complaint that Tate violated the Illinois Wage Payment and Collection Act, 820 ILCS 115/1, *et seq.*, by failing to pay earned wages within 13 days after the end of the pay period in which such wages were earned, and by failing to pay all compensation owed to Howard and Johnson at the time of separation. [1] ¶¶ 64–73. At the outset of trial, plaintiffs abandoned any claims they

may have had for untimely payment of wages, and so judgment is entered in favor of defendants on all such claims.

### C.     Overtime

The Fair Labor Standards Act provides that no employer may employ any employee "for a workweek longer than forty hours unless such employee receives compensation for his employment in excess of [forty hours] at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207(a)(1). The state overtime provision is parallel to its federal counterpart, and "Illinois courts apply the same principles … to the state provision." *Urnikis-Negro v. Am. Fam. Prop. Services*, 616 F.3d 665, 672 n.3 (7th Cir. 2010).

To carry their burden, plaintiffs need to prove that they were "employees" within the meaning of the Act, and that they performed work for which they were improperly compensated. *See Melton v. Tippecanoe Cnty.*, 838 F.3d 814, 818 (7th Cir. 2016). They proved their status as employees at summary judgment. For damages, plaintiffs only need to support their calculations through a "just and reasonable inference." *Brown v. Fam. Dollar Stores of IN, LP*, 534 F.3d 593, 595 (7th Cir. 2008); *see* [22] at 9–10. However, "[t]he just and reasonable inference standard 'applies to damages questions only *after* an employee has met the initial burden to establish liability by showing that the employee performed uncompensated overtime work.'" *Osborn v. JAB Mgmt. Servs., Inc.*, 126 F.4th 1250, 1256 (7th Cir. 2025) (quoting *Viet v. Le*, 951 F.3d 818, 822 (6th Cir. 2020)) (cleaned up) (emphasis in original). "The standard does not apply to the employee's threshold burden of proving a violation of the FLSA. On that question—'whether the plaintiff worked overtime at all'—the

typical burden of proof applies." *Osborn*, 126 F.4th at 1256-57 (quoting *Viet*, 951 F.3d at 822).

Howard and Johnson were employees, but I find that they worked no more than a standard 40-hour workweek.[5] Howard and Johnson have not carried their burden of proving that it is more likely than not that they performed overtime work for which they were improperly compensated. As discussed above, I find their testimony about working more than 40 hours a week not credible, while Tate's testimony, corroborated by the records of the limited number of returns processed by plaintiffs and clients obtained through currency-exchange referrals, make it more likely than not that Howard and Johnson worked an ordinary full-time schedule. Defendants are not liable for any claims alleging failure to pay an overtime premium.

### D.    Minimum Wage

To prevail on their minimum wage claims, Howard and Johnson must prove that each of them "was an employee within the meaning of the Act" (established at summary judgment) and that each "was underpaid for at least one workweek." *Brant v. Schneider Nat'l, Inc.*, 43 F.4th 656, 664 (7th Cir. 2022).

Howard testified that for the 2020 tax season she worked 15 weeks and was paid $13,000; that for the 2021 tax season she worked 24 weeks and was paid $16,530; and that for the 2022 tax season she worked 16 weeks and was paid $13,193.10. Her regular rate—her pay received divided by the number of weeks worked divided by the

---

[5] While it is possible that there were pay periods at the height of tax season when Howard or Johnson may have worked overtime, they have not presented any evidence that would allow me to identify how much they worked in any given pay period.

40 hours per week I found she worked—therefore exceeded the minimum wage in all years.[6]

Johnson's situation is different. She was only paid $3,000 for the 2020 tax season despite working 40 hours per week for 16 weeks. Her rate of pay was thus only $4.69 per hour compared to an applicable minimum wage of $13.00 per hour. Johnson was entitled to $8,320 for that period, which means she was underpaid by $5,320. Trebled, as mandated by Illinois law, 820 ILCS 105/12, Tate Legacy is liable to Johnson for $15,960. Johnson has also requested an order directing defendants to pay a reasonable attorney's fee. Because Illinois law entitles any employee paid less than the wage to which she is entitled to recover reasonable attorney's fees, 820 ILCS 105/12, she may file a fee petition seeking such a recovery from Tate Legacy.

---

[6] 2020: a regular rate of $21.67 per hour compared to a minimum wage of $13.00 per hour. 2021: a regular rate of $17.22 per hour compared to a minimum wage of $13.50 per hour. 2022: a regular rate of $20.61 per hour compared to a minimum wage of $14.00 per hour.

While it is possible that during the height of tax season there may have been pay periods when Howard was paid less than the minimum wage, she presented no evidence at trial that would allow me to identify any specific pay period for which she was not compensated at or above the minimum wage.

14

## IV. Conclusion

As to Johnson's minimum wage claims against Tate Legacy, the clerk shall enter judgment against Tate Legacy in favor of Johnson in the amount of $15,960 in damages. As to all other claims against Tate and Tate Legacy Inc., I find in favor of the defendants. Johnson shall follow Local Rule 54.3 in filing any petition for attorney's fees. Enter judgment and terminate civil case.

ENTER:

_____
Manish S. Shah
United States District Judge

Date: August 4, 2026

15